# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Jeanmax Darbouze

    v.                                           Civil No. 10-cv-252-LM

Nicholas A. Toumpas, Commissioner,
New Hampshire Department of Health
and Human Services, individually
and officially; David Ball, Chief
of Operations, individually and
officially; and Margaret LaFleur,
individually and officially


# O R D E R


Jeanmax Darbouze, a former employee of the New Hampshire Department of Health and Human Services ("DHHS") has sued in fourteen counts, for damages and injunctive relief. Darbouze's claims are based on the termination of his employment as a part-time Youth Counselor I at the Sununu Youth Services Center ("SYSC") in February of 2008, and DHHS's failure to hire him when he applied for five other positions in March, April, and May of that year. Those claims arise under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000-e to 2000e-17, the Federal Constitution (by means of 42 U.S.C. § 1883), the New Hampshire Constitution, and state common law. Before the court is defendants' motion for summary judgment on all fourteen counts of Darbouze's First Amended Complaint

(hereinafter "FAC" or "complaint").  Darbouze objects.  For the reasons that follow, defendants' motion for summary judgment is granted.

## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Chadwick v. WellPoint, Inc., 561 F.3d 38, 43 (1st Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).  "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted).

"Once the moving party avers an absence of evidence to support the non-moving party's case, the non-moving party must offer 'definite, competent evidence to rebut the motion,'" Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)), and "cannot rest on 'conclusory allegations, improbable inferences, [or] unsupported speculation,'" Meuser, 564 F.3d at 515 (quoting Welch v. Ciampa, 542 F.3d 927, 935 (1st Cir. 2008)).  When ruling on a party's motion for summary judgment, a trial court "constru[es] the record in the light most favorable to the nonmovant and resolv[es] all reasonable inferences in [that] party's favor."  Meuser, 564 F.3d at 515 (citing Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002)).

## Background

In compliance with Local Rule ("LR") 7.2(b)(1), defendants' memorandum of law in support of their motion for summary judgment "incorporate[s] a short and concise statement of material facts, supported by appropriate record citations, as to which [defendants] contend[ ] there is no genuine issue to be tried."  Darbouze's memorandum in opposition, however, includes a factual narrative, but does not "incorporate a short and concise statement of material facts, supported by appropriate

record citations, as to which [Darbouze] contends a genuine
dispute exists so as to require trial."  LR 7.2(b)(2).
Accordingly, "[a]ll properly supported material facts set forth
in [defendants'] factual statement shall be deemed admitted."[1]
Id.; see also CMI Capital Mkt. Inv., LLC v. González-Toro, 520
F.3d 58, 62-63 (1st Cir. 2008) (affirming trial court's
application of Puerto Rico's anti-ferret rule); Mariani-Colón v.
Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 219 (1st
Cir. 2007) (same); Ayala-Gerena v. Bristol Myers-Squibb Co., 95
F.3d 86, 95 (1st Cir. 1996) (noting, with approval, trial
court's application of Massachusetts' anti-ferret rule).  That
said, the following description of the factual background of
this case includes facts drawn from defendants' memorandum of
law that have been deemed admitted, supplemented by other
undisputed facts from the summary judgment record.  See Fed. R.
Civ. P. 56(c)(3).

Darbouze is a Haitian-born American citizen, and is black.
In support of his motion for summary judgment, he submitted an
undated resume that lists work as a private investigator (1997-
98), as a corrections officer (1999-2000), and as the general

---

[1] In his factual narrative, Darbouze does relate several
facts that may conflict with defendants' version of the facts.
He does not, however, directly identify any such evidentiary
conflict and, perhaps more importantly, he does not rely on any
such conflict in his substantive argument against summary
judgment.

manager of Notre Dame Security & Investigations (1998-present).
In addition, it lists a 2003 Bachelor's degree in criminal
justice, and indicates that Darbouze was working toward a
Master's degree in criminal psychology.

In November of 2006, Darbouze interviewed with David Ball
for a position as a Youth Counselor at SYSC.  At the time, Ball
was a supervisor at SYSC.  Ball recommended Darbouze's hiring,
and Darbouze began work as a full-time Youth Counselor I at SYSC
in February of 2007.[2]  Several months into his employment,
Darbouze asked to switch from full-time status to part-time
status.  To make that change, he resigned from his full-time
position and was re-hired as a part-time Youth Counselor I.  In
a letter dated April 17, 2007, Darbouze wrote: "I would like to
reside [sic] my full time position to part time as soon as
possible."  Defs.' Mot. Summ. J., Ex. A, Attach. 1 (doc. no. 17-
3).  As a part-time Youth Counselor I, Darbouze became part of a
pool of employees who were called on to fill gaps in the
coverage provided by full-time Youth Counselors.  For the next

---

[2] At various points, Darbouze contends that he believed he
was applying for a position as a Youth Counselor II, and was
surprised to find that he had been hired as a Youth Counselor I,
but the circumstances and terms of his initial hiring are not
material to any legal issue in this case.  See Vineberg v.
Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) ("A fact is
material only if it possesses the capacity to sway the outcome
of the litigation under the applicable law.") (quoting Cadle Co.
v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997)) (internal quotation
marks and brackets omitted).

two months, Darbouze worked approximately twenty hours per week at SYSC.

In June of 2007, Darbouze asked for time off to recover from a knee injury.  Ball granted that request.  Darbouze was cleared for work in August of 2007, and spoke to Ball about returning to work at that time.  When Darbouze expressed disinterest in the various shifts that Ball offered him, Ball advised Darbouze to call back in September, to see about shifts that might become available then, when SCYC's part-time summer workers finished their employment.  Darbouze and Ball spoke at the end of September but, again, Darbouze was not interested in working the shifts for which Ball needed coverage.  The shifts Darbouze declined were weekend and evening shifts, which are the shifts for which Ball generally needed coverage from part-time employees such as Darbouze.  See Pl.'s Obj. to Summ. J., Ex. C (doc. no. 26-2), at 18-19.  Darbouze's last shift as a part-time Youth Counselor I was in June of 2007.

In February of 2008, Ball was asked by DHHS's Bureau of Human Resources ("BHR") to review the SYSC payroll list and remove the names of persons no longer working there.  Ball removed several names from the list, including Darbouze's.  He removed Darbouze's name because he had not heard from Darbouze since September of 2007.  Several weeks later, without explaining why it was making the request, BHR asked Ball to

contact Darbouze to explain why he had been removed from the payroll list.  Ball did so, by telephone, and told Darbouze that because he had not worked in months, he had voluntarily quit his position.  In May of 2008, Ball sent Darbouze a formal letter of separation from DHHS, indicating that he had been discharged in February.

Between March 31 and May 16, 2008, Darbouze applied for five DHHS positions, representing himself as an internal candidate by virtue of his employment as a Youth Counselor I at SYSC.[3]  Specifically, he applied for the following positions: (1) # 40105, Juvenile Probation and Parole Officer ("JPPO"), in the Keene District Office; (2) # 16975, JPPO, in the Manchester District Office; (3) # 41050, Fraud Investigator with the Division of Family Assistance ("DFA"), in the Manchester District Office; (4) # 12507, Family Services Specialist ("FSS") Trainee, in the Manchester District Office; and (5) # 12681, FSS Trainee, in the Concord District Office.  For each of those five positions, Darbouze was: (1) treated as an internal candidate; (2) certified by BHR as meeting the minimum qualifications; and

---

[3] In each application, Darbouze represented that he had worked as a Youth Counselor I from January of 2007 through the date of the application and had worked forty hours per week, notwithstanding the fact that he worked forty hours per week only from February through mid April of 2007, worked twenty hours per week from mid April through early June, and worked no hours at all after the second week of June.

(3) given an interview, as required by state personnel rules.
Darbouze was not selected for any of those positions.

Darbouze applied for position # 40105 (JPPO) on May 16,
2008, and was notified that he had not been selected by letter
dated July 10.  The candidate DHHS selected had previously
worked for five months as a Youth Counselor II at SYSC and for
approximately one year as a Youth Counselor III at the Tobey
School.  Darbouze had only four months of experience as a Youth
Counselor I, two of them working part time.

Darbouze applied for position # 16975 (JPPO) on April 19,
2008, and was notified that he had not been selected by letter
dated June 18.  The candidate DHHS selected was then working
part-time as a JPPO II, and had experience as a youth
caseworker.  Darbouze had no experience as a JPPO and no
apparent experience as a youth caseworker.[4]

Darbouze applied for position # 41050 (DFA Fraud
Investigator) on April 19, 2008, and was notified that he had
not been selected by letter dated May 22.  The candidate DHHS
selected had eight years of experience as a Family Services

---

[4] Darbouze's application, but not his resume, indicate that
he worked for about a year and a half as a "case work
specialist" for "child family / services" in Miami, Florida, but
the box on the application where Darbouze was asked to describe
the duties he performed in that position is blank.  See, e.g.,
Pl.'s Mot. Summ. J., Ex. A, Attach A-2 (doc. no. 17-4), at 4.

Specialist in DFA.  Darbouze had no experience as an FSS or in any other position with DFA.

Darbouze applied for position # 12507 (FSS Trainee) on March 31, 2008, and was notified that he had not been selected by letter dated May 20, 2008.  The candidate DHHS selected was then working as an FSS in a different district office and had prior experience working with the developmentally disabled, who are a part of the DFA clientele.  Darbouze had no experience as an FSS working for DFA, and neither his resume nor his application indicate that he had any experience working with the developmentally disabled.

Darbouze applied for position # 12681 (FSS Trainee) on April 19, 2008, and was notified that he had not been selected by letter dated June 18.  The candidate DHHS selected had prior work experience in clerical positions at the Tobey School (as a volunteer) and at the Division of Juvenile Justice Systems, and also had experience as a medical assistant, a job that involved patient contact.

In his complaint, Darbouze alleges that Ball and Margaret LaFleur made the decisions not to hire him for each of the five positions described above.  However, it is deemed admitted that neither Ball nor LaFleur had any role in the hiring decisions

9

for any of those five positions.[5]  LaFleur did interview Darbouze
on two occasions, but not for any of the five positions at issue
here.

Darbouze's complaint also alleges that "[o]n April 29,
2008, [he] reported violations of his civil rights to DHHS."
First Am. Compl. ¶ 24.  He makes no further allegations about
the content of his report, or to whom at DHHS he directed it.
The materials he has submitted on summary judgment are no more
informative on this issue, and are limited to the following
sentence from Darbouze's response to an interrogatory propounded
by Ball: "I complained both internally and to the New Hampshire
Commission for Human Rights about violations of my civil
rights."  Pl.'s Obj. to Summ. J., Ex. F (doc. no. 25-4), at 4.
By letter dated May 30, 2008, the New Hampshire Commission for
Human Rights ("HRC") notified the Commissioner of the New
Hampshire Juvenile Justice System that Darbouze had filed a
charge of discrimination against it.

Based on the foregoing, Darbouze sued Toumpas, Ball, and
LaFleur.  While the FAC is not as clear as it might be – several

---

[5] Even if that fact were not deemed admitted, Darbouze has
produced nothing to create a triable issue.  All he has is his
own deposition testimony which amounts to nothing more than
speculation that: (1) "[a]ll those [DHHS] supervisors, they work
together with Dave Ball," Pl.'s Obj. to Summ. J., Ex. A (doc.
no. 26), at 88; and (2) "they're connected to each other," id.
at 89.  See generally id. at 87-92.  He does not explain how he
is competent to provide evidence on the inner workings of DHHS.

counts do not identify the law on which they are based – it asserts eight federal claims and six claims under state law. Darbouze's federal claims include the following: (1) DHHS discharged him because of his national origin (Count I) and race (Count II), in violation of 42 U.S.C. § 2000e-2(a)(1); (2) DHHS failed to hire him because of his national origin (Count III) and race (Count IV), also in violation of 42 U.S.C. § 2000e-2(a)(1); (3) DHHS retaliated against him, in violation of 42 U.S.C. § 2000e-3(a), by failing to hire him because he complained internally about discrimination (Count V), and because he filed a formal charge of discrimination (Count VI); and (4) Ball and LaFleur deprived him of his right to equal protection under the Fourteenth Amendment to the United States Constitution by hiring non-Haitian Caucasian candidates to fill positions for which he had applied and was qualified (Counts VII and IX).  Darbouze's state claims include the following: (1) Ball and LaFleur deprived him of his right to equal protection under the New Hampshire Constitution by hiring non-Haitian Caucasian candidates to fill positions for which he had applied and was qualified (Counts VIII and X); (2) Ball is directly liable, and Toumpas and DHHS are vicariously liable, for wrongful termination (Counts XI and XII); and (3) Ball is directly liable, and Toumpas and DHHS are vicariously liable, for defamation (Counts XIII and XIV).

**Discussion**

Defendants move for summary judgment on all fourteen counts of Darbouze's First Amended Complaint.  Darbouze objects.  The court considers each of Darbouze's causes of action in turn.

A. Counts I and II

In Counts I and II, Darbouze claims that Ball discharged him because of his national origin (Count I) and his race (Count II).  Defendants move for summary judgment, arguing that Darbouze has failed to present sufficient evidence to establish that he was discharged for any reason other than the fact that he had not worked any shifts at SYSC during the eight months leading up to his discharge.  Darbouze contends that he has produced both direct evidence of discrimination and evidence sufficient to show that defendants' proffered reason for his discharge is pretextual.  The court does not agree.

1. Legal Principles

It is unlawful for an employer "to discharge any individual . . . because of such individual's race, color, . . . or national origin."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may prove a Title VII claim, including a discriminatory-discharge claim, by producing direct evidence of discrimination, see Patten v. Wal-Mart Stores E., Inc., 300 F.3d 21, 25 (1st Cir. 2002), and "[i]t is generally to an employee's benefit to show

12

direct evidence of discrimination," <u>Weston-Smith v. Cooley Dickinson Hosp., Inc.</u>, 282 F.3d 60, 64 (1st Cir. 2002).  Direct evidence of discrimination, however, is uncommon.  <u>See</u> <u>Patten</u>, 300 F.3d at 25; <u>Weston-Smith</u>, 282 F.3d at 65; <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 53 (1st Cir. 2000)).  Accordingly, courts have fashioned a now-familiar framework for proving discrimination cases with circumstantial evidence.  As the court of appeals for this circuit explained in a case involving an employee's claim that he was discharged because of his race:

> Disparate treatment cases "ordinarily proceed under the three-step, burden-shifting framework" outlined in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>Clifford v. Barnhart</u>, 449 F.3d 276, 280 (1st Cir. 2006).  First, the plaintiff must establish, by a preponderance of the evidence, a prima facie case of discrimination.  <u>See</u> <u>Kosereis v. Rhode Island</u>, 331 F.3d 207, 212 (1st Cir.  2003).  Second, if the plaintiff makes out this prima facie case, the defendant must articulate a legitimate, nondiscriminatory explanation for its actions.  <u>See</u> <u>id.</u>  Third, if the defendant carries this burden of production, the plaintiff must prove, by a preponderance, that the defendant's explanation is a pretext for unlawful discrimination.  <u>See</u> <u>id.</u>  The burden of persuasion remains at all times with the plaintiff.  <u>See</u> <u>Sher v. U.S. Dep't of Veterans Affairs</u>, 488 F.3d 489, 507 (1st Cir. 2007).

<u>Mariani-Colón</u>, 511 F.3d at 221 (1st Cir. 2007) (parallel citations omitted); <u>see also</u> <u>Benoit v. Tech'l Mfg. Corp.</u>, 331 F.3d 166, 173 (1st Cir. 2003).

2. Direct Evidence

Darbouze appears to contend that he has produced direct evidence that his discharge was a product of discrimination.  In his complaint, he alleges:

> Defendant Ball did not want [him] back [after his medical leave] because "that Haitian guy thinks he's all that.  He thinks he can make his own schedule.  I can't understand half what that guy says."  Additionally, Defendant Ball made fun of his accent and Defendant Ball stated that "He . . . would never work here again."

First Am. Compl. ¶ 23.  Darbouze does not allege when Ball made the quoted statements, to whom he made them, the context in which they were allegedly made, or anything about the relationship between those statements and Ball's decision to terminate his employment.

As a preliminary matter, it is not at all clear that the statements on which Darbouze relies are direct evidence of discrimination.  In this legal context, "'direct evidence' refers to 'a smoking gun' showing that the decision-maker relied upon a protected characteristic in taking an employment action." PowerComm, LLC v. Holyoke Gas & Elec. Dep't, 657 F.3d 31, 35 (1st Cir. 2011) (citing Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996)); see also Wennik v. PolyGram Grp. Distrib., Inc., 304 F.3d 123, 132 (1st Cir. 2002) ("Direct evidence 'consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment

decision.'") (quoting <u>Kirk v. Hitchcock Clinic</u>, 261 F.3d 75, 79
(1st Cir. 2001)); <u>Patten</u>, 300 F.3d at 25 (same) (citing <u>Febres
v. Challenger Carib. Corp.</u>, 214 F.3d 57, 60 (1st Cir. 2000).
Moreover, while stray remarks, in combination with other
evidence, may support a reasonable inference of discriminatory
intent at the third stage of the <u>McDonnell Douglas</u> framework,
<u>see</u> <u>Straughn v. Delta Air Lines, Inc.</u>, 250 F.3d 23, 36 (1st Cir.
2001), stray remarks most assuredly do not, as Darbouze seems to
suggest, count as direct evidence of discrimination.  To the
contrary, "[d]irect evidence of discrimination 'does not include
stray remarks in the workplace, particularly those made by
nondecisionmakers or statements made by nondecisionmakers
unrelated to the decisional process itself.'"  <u>Ríos-Jiménez v.
Principi</u>, 520 F.3d 31, 40 (1st Cir. 2008) (quoting <u>Ayala-Gerena</u>,
95 F.3d at 96; citing <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228,
251-52 (1989)).  Here, Darbouze does not allege any facts, much
less produce any evidence, to relate the comments he ascribes to
Ball to the decisionmaking process.

There is, however, an even larger problem with Darbouze's
reliance on the remarks he ascribes to Ball.  He has produced no
admissible evidence that Ball ever made them.  Darbouze's
complaint does not allege who Ball spoke to about his national
origin, accent, and prospects for future employment.  During his
deposition, Darbouze testified that he did not hear Ball make

the remarks alleged in his complaint, and that the only person

who heard them was Kelly Carey.  Pl.'s Obj. to Summ. J., Ex. A

(doc. no. 26), at 92-94.  More specifically, he testified as

follows:

> Q.   And what do you believe David Ball said to
> prevent you from being employed?
>
> A.   But the thing is, the comment he made, he
> said, this guy thinks he's all that.
>
> Q.   Who did he say that to?
>
> A.   Kelly told me that.  I said, Kelly, do you
> know why he's been lying, saying there was no job
> whenever I call, and she said, did you try to make
> your own schedule, and I said, no, and she said, Dave
> Ball said you own a security company and that you
> tried to make your own schedule and that you think
> you're all that.  That's what he said – this person
> thinks he's all that, he will never come back to work
> here.

Id. at 92.  The deposition continued:

> Q.   Are those all of the comments that you
> believe David Ball made about you.
>
> A.   I don't know.  There might be more.  I don't
> know.
>
> Q.   Do you have any reason to believe there are
> more?
>
> A.   I don't know.
>
> Q.   I'm sorry.  Can you speak up?
>
> Q.   I don't know.
>
> Q.   So to be clear, in this deposition have you
> told us all of the comments you believe David Ball
> made about you?

        A.   I know that there was a problem with my
accent.  He said he could not understand me.

        Q.   Who did he say that to you?

        A.   That's what Kelly said.  She said that he
said that.

        Q.   And he said that to Kelly Carey?

        A.   I don't know.

        Q.   Do you know if he said it to anyone else?

        A.   I don't know.

Id. at 93-94.  While Darbouze's memorandum of law cites his

deposition as evidentiary support for his allegation that Ball

said "that Haitian thinks he's all that," Pl.'s Mem. of Law

(doc. no. 25-1), at 8, none of the deposition pages he cites

include any mention of comments by Ball concerning his national

origin or race.  In addition, the court's own examination of the

deposition revealed no testimony about such remarks.

        During discovery, Ball propounded an interrogatory asking

Darbouze to describe all the facts supporting his allegations

about Ball's remarks.  Darbouze responded:

        I do not recall specifically when Defendant Ball
    made the comments that he made.  However, I do know
    that they were sometime between June 7, 2007 through
    April 29, 2008.  Again, the comments were made to
    office personnel, and then relayed to me.

Defs.' Mot. Summ. J., Ex. C-1 (doc. no. 17-22), at 6.

        Defendants have also produced an affidavit from Carrie

Keeley, who, all appear to agree, is the person Darbouze called

17

"Kelly Carey" in his deposition.[6]  In her affidavit, Keeley
stated:

>     I did not hear David Ball make any negative
> remarks about Mr. Darbouze including remarks related
> to his race or national origin.

>     I did not hear any other DHHS employees make any
> negative remarks about Mr. Darbouze including remarks
> about his race or national origin.

>     The only comments I recall David Ball making
> about Mr. Darbouze related to their inability to come
> to an agreement regarding scheduling.  David Ball said
> something to the effect of Mr. Darbouze wants to make
> his own schedule.

Defs.' Mot. Summ. J., Ex. I (doc. no. 17-29), ¶¶ 6-8.[7]

     The bottom line is this.  Even if the comments alleged in
paragraph 23 of Darbouze's FAC counted as direct evidence of
discrimination – and the court harbors serious doubts that they
even qualify as evidence of discriminatory intent for purposes
of a McDonnell Douglas pretext analysis – Darbouze has produced
no admissible evidence that Ball ever made the comments about
his national origin and accent that are attributed to him in the
complaint.  All Darbouze has is his deposition testimony about
what he says Keeley said Ball said about him.  That, of course,
is nothing more than inadmissible hearsay on which Darbouze is

---

     [6] Carrie Keeley also appears to be the person called "Kari
Kiley" in Ball's deposition.  See Pl.'s Obj. to Summ. J., Ex. C
(doc. no. 26-2), at 56.

     [7] Another SYSC employee, Jessica Gelinas, has testified to
similar effect.  See Defs.' Mot. Summ. J., Ex. H (doc. no. 17-
28), ¶¶ 5-6.

not entitled to rely.  See Fed. R. Civ. P. 56(c)(2); Meuser, 564
F.3d at 515.  Moreover, not that it is legally significant,
Darbouze's inadmissible hearsay concerning Ball's remarks is
directly contradicted by Keeley's admissible testimony about
what Ball said to her, and by Ball's admissible testimony about
what he said to Keeley.[8]  With regard to his argument that he has
produced direct evidence that he was discharged because of his
national origin or race, Darbouze has not come close to creating
a genuine issue of material fact.

### 3. Circumstantial Evidence

Darbouze's attempt to invoke circumstantial evidence under
the McDonnell Douglas framework fares no better; he has failed
to establish a prima facie case that his discharge was based on
his national origin or race.

When a plaintiff claims to have been discharged because of
national origin or race, he "has the burden of showing, by a
preponderance of the evidence, a prima facie case of

---

[8] At Ball's deposition, the following exchange focused on
Ball's attitude toward Darbouze's accent:

    Q.  All right.  Make any comments about his accent?
    A.  No.
    Q.  Hard to understand him or anything?
    A.  No.

Pl.'s Obj. to Summ. J., Ex. C. (doc. no. 26-2), at 57.

discrimination." <u>Windross v. Barton Prot. Servs., Inc.</u>, 586
F.3d 98, 103 (1st Cir. 2009) (citation omitted).

> To establish a <u>prima facie</u> case of racial
> discrimination, [a Title VII plaintiff] must show that
> (1) he belonged to a protected class, a racial
> minority; (2) he was performing his job at a level
> that rules out the possibility that he was fired for
> job performance; (3) he suffered an adverse job action
> by his employer; and (4) his employer sought a
> replacement for him with roughly equivalent
> qualifications. <u>Smith v. Stratus Computer, Inc.</u>, 40
> F.3d 11, 15 (1st Cir. 1994); <u>see also</u> [St. Mary's
> Honor Ctr. v.] <u>Hicks</u>, 509 U.S. [502,] 506 [(1993)];
> <u>McDonnell Douglas</u>, 411 U.S. at 802. This initial
> burden is not an onerous one, [<u>Tex. Dep't of Cmty.
> Affairs v.</u>] <u>Burdine</u>, 450 U.S. [248,] 253 [(1981)].

<u>Benoit</u>, 331 F.3d at 173 (parallel citations omitted); <u>see also</u>
<u>Windross</u>, 586 F.3d at 103.

### a. Darbouze's Prima Facie Case

Darbouze, a black Haitian, is a member of a protected
class, which establishes the first element of his prima facie
case. <u>See</u> <u>Benoit</u>, 331 F.3d at 173. Darbouze's removal from the
SYSC payroll list establishes the third element, an adverse job
action.[9]

Darbouze runs into difficulty, however, with the second
element of his prima facie case, which requires him to show that
"he was performing his job at a level that rules out the

---

[9] Given that when he was removed from the payroll list,
Darbouze had not worked any shifts at SYSC for eight months, it
is certainly arguable that his removal was an act of
administrative housekeeping, not an adverse job action.

possibility that he was fired for job performance." Benoit, 331
F.3d at 173.  Darbouze's job, such as it was, was a part-time
position which he "performed" by being part of a pool of
individuals available to be called upon, when and if needed, to
fill in for full-time Youth Counselors at SYSC.  It is
undisputed that: (1) when Darbouze's part-time employment was
terminated, he had not worked a shift in more than eight months;
and (2) Darbouze was unwilling to work the shifts Ball had
offered him in August and September of 2007.  In his objection
to summary judgment, Darbouze neither refers to the elements of
a prima facie Title VII discriminatory-discharge claim nor gives
any indication of how he has established that he was filling his
position in a way that rules out the possibility that he was
discharged for performance-related reasons.  A twice-
demonstrated unwillingness to work the weekend and evening
shifts for which Ball most needed coverage would certainly seem
to be a legitimate performance-based reason for dropping
Darbouze from the list of those available to work part-time as a
Youth Counselor I.  Even so, the court will assume that Darbouze
has established the second element of his prima facie case.

Darbouze's showing on the fourth element of his prima facie
case is even weaker than his showing on the second element.  To
satisfy his burden of showing that "his employer sought a
replacement for him with roughly equivalent qualifications,"

Benoit, 331 F.3d at 173, Darbouze argues that his "original
position was filled by a Caucasian, American-born intern," Pl.'s
Mem. of Law (doc. no. 25-1), at 10.[10]  As evidentiary support, he
points to the underlined portion of the following passage from
Ball's deposition:

> Q.   So, in September, the summer intern or employee
>      had left at that point?
>
> A.   There were several of them.
>
> Q.   Several.
>
> A.   There [were] I think nine of them.
>
> Q.   Is it standard procedure to fill an employee's
>      spot when that employee goes out on leave?
>
> A.   It depends on the terms.  If it's – and , no, it
>      isn't.  Even a full-time permanent staff we have
>      to get permission to fill it with a temporary
>      staff.
>           With part-timers, it's kind of almost like a
>      pool, so there isn't an exact numbered position
>      that you would replace somebody.

Pl.'s Obj. to Summ. J., Ex. C (doc. no. 26-2), at 20-21.  The
subject of the foregoing portion of Ball's deposition appears to
be how he responded to Darbouze's going out on leave in June of
2007, not whether or how he sought to fill Darbouze's position
after he was discharged in February of 2008.  In other words,
Darbouze has produced no evidence to show that Ball sought a

---

[10] Darbouze does not indicate whether the "original
position' to which he refers is the full-time position, or the
part-time position he took after resigning his full-time
position.

similarly qualified replacement for him after his removal from the payroll list in February of 2008.  Accordingly, Darbouze has failed to establish his prima facie case.

### b. Pretext

Even assuming that Darbouze had established his prima facie case, and that defendants have offered a legitimate non-discriminatory reason for his discharge, which Darbouze appears to concede, his claims would still fail at the third stage of the McDonnell Douglas framework, which requires him to show that the reasons proffered for his discharge were a mere pretext for discrimination.  Defendants say that Darbouze's part-time employment as a Youth Counselor I was terminated in February of 2008 because he had not worked a shift since June of 2007, and had not been in contact with Ball since September of 2007. Darbouze says those reasons are pretextual.

"There is 'no mechanical formula' for determining pretext." McDonough v. City of Quincy, 452 F.3d 8, 18 (1st Cir. 2006) (quoting Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 39 (1st Cir. 2003)).  Rather, "pretext can be proven in many ways." McDonough, 452 F.3d at 18 (citing Santiago-Ramos, 217 F.3d at 55).  Here, Darbouze argues that the pretextual nature of the explanation given for his discharge is demonstrated by: (1) indirect evidence in the form of "weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in [DHHS's] proffered legitimate reasons," Santiago-Ramos, 217 F.3d at 56 (quoting Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998)); and (2) direct evidence in the form of stray remarks that prove Ball's animus against him based on his national origin or race.  The court does not agree.

**Weakness of the proffered explanation**.  A Title VII plaintiff "may show pretext by establishing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons." Martinez-Burgos v. Guayama Corp., 656 F.3d 7, 14 (1st Cir. 2011) (citation and internal quotation marks omitted).  The problem with Darbouze's argument is that he does not point out any inconsistency or other weakness in the reasons proffered for his discharge. Defendants say Darbouze was discharged because, as of February of 2008, he had not worked a single shift since July of 2007. Darbouze offers no evidence to undercut the plausibility of that explanation or the accuracy of its factual premise.  Rather, in the section of his memorandum devoted to his inconsistency argument, he mentions: (1) Ball's alleged problem with his accent; and (2) his replacement by a summer intern (presumably in June of 2007), despite Ball's testimony that summer interns

24

are not normally given permanent positions at DHHS.[11]  Assuming
for the sake of argument that Darbouze has produced admissible
evidence of either Ball's dislike of his accent or his
replacement by an intern, which he has not,[12] neither of those
things has any bearing on the plausibility of the explanation
given for Darbouze's discharge, i.e., the fact that as of
February of 2008, he had not worked a single shift at SYSC in
approximately eight months.  That is, Darbouze has identified
nothing about the reason given for his termination that is weak,
implausible, inconsistent, incoherent, or contradictory.
Accordingly, Darbouze's first attempt at demonstrating pretext
falls far short of the mark.

---

[11] Darbouze does not say when he was allegedly replaced by
an intern, but there is nothing in either his memorandum or the
record to suggest that he was replaced by an intern after his
discharge in February of 2008.

[12] As evidence of Ball's dislike of his accent, Darbouze
directs the court to: (1) his own deposition testimony that
Carrie Keeley told him that Ball had told her that he had
trouble understanding Darbouze; and (2) an interrogatory answer
in which he reported two statements he attributed to Ball,
neither of which concerned his accent.  As evidence of his
replacement by an intern, in contravention of DHHS policy,
Darbouze directs the court to the underlined portion of Ball's
deposition:

    Q.   Is it standard procedure to fill an employee's
         spot when that employee goes out on leave?
    A.   It depends on the terms.  If it's – and, no, it
         isn't.  Even a full-time permanent staff we have
         to get permission to fill with a temporary staff.

Pl.'s Obj. to Summ. J, Ex. C (doc. No. 26-2), at 20.

**Stray remarks**.  "[S]tray workplace remarks, as well as
statements made either by non-decisionmakers or by
decisionmakers not involved in the decisional process, normally
are insufficient, standing alone, to establish either pretext or
the requisite discriminatory animus." Meléndez v. Autogermana,
Inc., 622 F.3d 46, 54 (1st Cir. 2010) (quoting Gonzalez v. El
Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002) (internal quotation
marks omitted).  On the other hand, evidence of such "comments
may be sufficient to support an inference of pretext and
discriminatory animus." Meléndez, 622 F.3d at 54 (citing
Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st
Cir. 2000)).  The probative value of such comments, however, is
directly related to their temporal and contextual proximity to
the decisionmaking process.  See Meléndez, 622 F.3d at 54
(citing Rivera-Aponte v. Rest. Metropol #3, Inc., 338 F.3d 9, 12
(1st Cir. 2003)); see also McMillan v. Mass. SPCA, 140 F.3d 288,
301 (1st Cir. 1998) (citing Armbruster v. Unisys Corp., 32 F.3d
768, 779 (3d Cir. 1994); Ezold v. Wolf, Block, Schorr & Solis-
Cohen, 983 F.2d 509, 545 (3d Cir. 1992)).

Here, Darbouze cannot recall when Ball made remarks about
his national origin or race, other than to say "that they were
[made] sometime between June 7, 2007 through April 29, 2008."
Defs.' Mot. Summ. J., Ex. C-1 (doc. no. 17-22), at 6.  Thus,
there is no factual basis for linking Ball's alleged remarks to

his decision to discharge Darbouze.  Moreover, Darbouze has produced only inadmissible hearsay evidence that Ball commented on his accent and has not even produced hearsay evidence that Ball ever referred to him as Haitian, much less that he did so disparagingly.  Accordingly, Darbouze's second attempt at demonstrating pretext also fails.[13]

### 4. Summary

Because Darbouze has not established a prima facie case of discriminatory discharge, and has not produced evidence sufficient to show that defendants' proffered reasons for his discharge are pretextual, defendants are entitled to judgment as a matter of law on Counts I and II.

### B. Counts III and IV

In Counts III and IV, Darbouze claims that Ball, LaFleur, and other DHHS employees failed to hire him for five separate positions because of his national origin (Count III) and his race (Count IV).  Defendants move for summary judgment, arguing that: (1) Darbouze has failed to produce sufficient facts to establish that he was qualified for any of those five positions;

---

[13] Darbouze's stray-remarks argument also refers to Ball's alleged failure to send him for training, contrary to DHHS policy, but whether Ball sent Darbouze to required training has no bearing on whether Ball made remarks from which one could infer animus based on Darbouze's national origin or race.

and (2) Darbouze has not established that those positions were filled by candidates with qualifications less than or equal to his own.  Darbouze contends that he has produced both direct evidence of discrimination and evidence sufficient to show that the reasons proffered for not hiring him are pretextual.  The court does not agree.

### 1. Legal Principles

It is unlawful for an employer "to fail or refuse to hire . . . any individual . . . because of such individual's race, color, . . . or national origin."  42 U.S.C. § 2000e-2(a)(1).  "[T]he elements of a failure-to-hire claim are: (i) that the plaintiffs are members of a protected class; (ii) that they were qualified for the position to which they aspired; (iii) that they were not hired; and (iv) that a person possessing similar or inferior qualifications was hired."  Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010) (citing Morón-Barradas v. Dep't of Educ., 488 F.3d 472, 478 (1st Cir. 2007); Keyes v. Sec'y of Navy, 853 F.2d 1016, 1023 (1st Cir. 1988)).

### 2. Darbouze's Prima Facie Case

Darbouze is a member of a protected class, see Benoit, 331 F.3d at 173, and he was not hired for the five positions on which he bases his failure-to-hire claims.  Accordingly, he has established the first and third elements of his prima facie

case.  Moreover, despite some uncertainty, the court will assume
that Darbouze has established that he was qualified for all five
positions by showing that he was interviewed for all of them,
based on a determination by the DHHS Bureau of Human Resources
that he met the minimum qualifications for those positions.[14]
The problem arises with the fourth element of the prima facie
case.

To establish that element, Darbouze must show "that a
person possessing similar or inferior qualifications was hired."
Ahern, 629 F.3d at 54.[15]  Darbouze has admitted, however, that he
has "no information or evidence that the persons selected for
each of the positions that [he] applied for did not have more

---

[14] Defendants challenge the concept that an internal
candidate who is certified as meeting the minimum qualifications
is actually qualified for a position, for purposes of Title VII,
and their material facts on this issue have been deemed
admitted.  See Pl.'s Mem. of Law (doc. no. 17), at 2.  Even so,
the court will assume that Darbouze has established the second
element of his prima facie case.  That is a particularly
generous assumption, given Darbouze's failure to produce any of
the relevant job descriptions.

[15] Darbouze appears not to recognize that the fourth element
of the prima facie case has a comparative component that
requires an examination of his qualifications vis-à-vis those of
the successful applicants, or those of the applicants defendants
continued to seek, see McDonnell Douglas, 411 U.S. at 802
(describing fourth element as requiring a plaintiff to show
"that, after his rejection, the position remained open and the
employer continued to seek [applications] from persons of
complainant's qualifications").  In his recitation of the
elements of a prima facie case, Darbouze omits the phrase
underlined above.

relevant experience than [him]."  Defs.' Mot. Summ. J., Ex. C-1 (doc. no. 17-21), at 3, 5.  That is that.  But there is more. Not that they needed to, defendants have produced evidence, necessarily undisputed, that for each of the five hirings Darbouze challenges, the candidate selected over him had substantially more relevant experience.  See Defs.' Mot. Summ. J., Ex. A (doc. no. 17-2) ¶¶ 15-19.  While there might be room for arguing that, perhaps, one of the positions Darbouze sought (FSS Trainee, # 12681) was filled by a candidate with qualifications roughly commensurate to his, he has not produced the job description for that position which would be essential for any meaningful comparison.  And, even after being provided with the application of the successful candidate, Darbouze has not argued that his qualifications equaled or exceeded the qualifications of that candidate.  Darbouze does point out that all of the five positions he sought were filled by American-born Caucasian applicants, but that is not enough to establish the fourth element of a prima facie case of discriminatory failure to hire.  See Ahern, 629 F.3d at 54 (explaining that fourth element requires a showing "that a person possessing similar or inferior qualifications was hired").  In short, Darbouze has failed, by a wide margin, to establish a prima facie case of discriminatory failure to hire.

### 3. Pretext

Even if he had established his prima facie case, however, Darbouze would not be able to establish that the reasons proffered for hiring other candidates, i.e., their greater relevant experience, was pretextual.  As with his discriminatory-discharge claim, Darbouze argues that pretext is demonstrated by inconsistencies in the proffered explanations and stray remarks.  Neither argument is persuasive.

With regard to the consistency of the proffered explanations, all but one of Darbouze's arguments concern Ball's attitude toward him, but the court has deemed admitted the fact that Ball "was not responsible for the hiring of any of the five positions at issue in this case."  Defs.' Mem. of Law (doc. no. 17-1), at 3.  Thus, Ball's attitude toward Darbouze is entirely immaterial to Darbouze's failure-to-hire claim.  Darbouze's remaining evidence of inconsistency, the fact that all the positions for which he applied were filled by Caucasian Americans, has no bearing on their relevant experience, which was the basis for the decisions to hire them.  Darbouze's reliance on stray remarks is equally unavailing for the reasons explained in the previous section, plus the fact that Ball played no role in any of the disputed hiring decisions.  In this regard, Darbouze's unsupported belief that all DHHS administrators are somehow in cahoots, no matter how sincerely

31

held, see Pl.'s Obj. to Summ. J., Ex. A. (doc. no. 26), at 87-92, is insufficient to create a genuine issue of material fact on this issue, in light of the admitted fact that Ball had no role in any of the five disputed hiring decisions.

### 4. Summary

Because Darbouze has not established a prima facie case of discriminatory failure to hire, and has not produced evidence sufficient to show that defendants' proffered reasons for declining to hire him are pretextual, defendants are entitled to judgment as a matter of law on Counts III and IV.

### C. Counts V and VI

In Counts V and VI, Darbouze asserts that by virtue of the five disputed decisions not to hire him, made by Ball, LaFleur, and other DHHS employees, DHHS retaliated against him for making an internal complaint about discrimination (Count V) and for filing a formal charge of discrimination with the HRC (Count VI). Defendants move for summary judgment on Darbouze's retaliation claims, arguing that he has not demonstrated any causal connection between his protected activity and the decision not to hire him. They further argue that even if Darbouze can establish his prima facie case, he cannot establish that the proffered reasons for the decisions not to hire him are pretextual. Darbouze disagrees, categorically.

### 1. Legal Principles

It is unlawful for an employer "to discriminate against . . . applicants for employment . . . because [they have] opposed any practice made an unlawful employment practice by this subchapter, or because [they have] made a charge . . . under this subchapter."  42 U.S.C. § 2000e-3(a).  That is, "Title VII expressly forbids not only direct discrimination, but also retaliation against an individual who has complained about discriminatory employment practices."  Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 72 (1st Cir. 2011) (citing Ahern, 629 F.3d at 55.  "To succeed on a retaliation claim, a plaintiff must show that [his] employer took some objectively and materially adverse action against [him] because [he] opposed a practice forbidden by Title VII, such as race discrimination."  Bhatti v. Trs. of Boston Univ., 659 F.3d 64, 73 (1st Cir. 2011) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59, 68 (2006)).

"In order to establish a prima facie case of retaliation, a plaintiff must show that [he] 'engaged in protected activity,' that [he] was the subject of an adverse employment action, and that the action was causally linked to [his] involvement in the protected activity."  Velazquez-Ortiz, 657 F.3d at 72 (citation omitted).  Regarding the third element of the prima facie case:

> For causality to be established, the plaintiff must show a nexus between the protected conduct and the alleged retaliatory act. Wright [v. CompUSA, Inc.], 352 F.3d [472,] 478 [(1st Cir. 2003)]; see also Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir. 2005) (noting that to establish a prima facie case of retaliation, a plaintiff must show that the defendant "took an adverse employment action against him because of, in whole or in part, his protected [conduct]"). "One way of showing causation is by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action." Wyatt v. City of Boston, 35 F.3d 13, 16 (1st Cir. 1994).

Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 37 (1st Cir. 2011).

Moreover, "[f]or the causation element to be satisfied, the employer must have taken the allegedly retaliatory action after the employee engaged in protected conduct." Taite v. Shineski, No. 08-cv-258-SM, 2010 WL 745160, at *19 (D.N.H. Mar. 1, 2010) (citing Sabinson v. Trs. of Dartmouth Coll., 542 F.3d 1, 5 (1st Cir. 2008)). Finally, "for an employment action to be retaliatory, the person taking that action must have known about the employee's protected conduct at the time he or she took the allegedly retaliatory action." Taite, 2010 WL 745160, at *19 (citing Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 85 (1st Cir. 2006); Koseris, 331 F.3d at 217, Santiago-Ramos, 217 F.3d at 57-58; King v. Town of Hanover, 116 F.3d 965, 968 (1st Cir. 1997)). "Once the plaintiff establishes a prima facie showing of retaliation, the McDonnell Douglas burden-shifting

approach applies." Enica v. Principi, 544 F.3d 328, 343 (1st Cir. 2008) (citing Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 26 (1st Cir. 2004)).

A "defendant can support a motion for summary judgment by showing that the adverse employment action was taken for a non-retaliatory reason." Rivera-Colón v. Mills, 635 F.3d 9, 12 (1st Cir. 2011) (citing Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 46 (1st Cir. 2010)). "In such [a] case, the plaintiff can defeat summary judgment by showing evidence sufficient to raise a material issue of fact as to whether retaliation was in fact a cause of the adverse action." Rivera-Colón, 635 F.3d at 12; see also Collazo, 617 F.3d at 50 ("To withstand summary judgment, a plaintiff need not prove by a preponderance of the additional evidence that [retaliation] was in fact the motive for the action taken. All a plaintiff has to do is raise a genuine issue of fact as to whether [retaliation] motivated the adverse employment action.") (citation and internal quotation marks omitted).

### 2. Retaliation for Darbouze's Internal Complaint

Darbouze's first retaliation claim, as stated in the FAC, is that defendants retaliated against him for making an internal complaint of discrimination by failing to hire him for five different positions. In his memorandum of law, however,

Darbouze states that "[i]mmediately after complaining about
violations of his human rights, Defendant DHHS terminated him."
Pl.'s Mem. of Law (doc. no. 25-1), at 14.  That statement
certainly seems to suggest that Darbouze is arguing that his
discharge was an act of retaliation for his internal complaint.[16]
But, it is entirely unclear whether he intends to replace the
retaliatory act actually alleged in Count V, i.e., DHHS's
failure to hire him, with a different act, i.e., his discharge,
or is now asserting that both his discharge and DHHS's failure
to hire him were acts of retaliation for his internal complaint.
In any event, because no retaliatory-discharge claim appears in
Darbouze's First Amended Complaint, the court disregards
Darbouze's discharge as an adverse employment action in the
context of his retaliation claim[17] and proceeds with the
understanding that Count V, like Count VI, asserts a retaliation
claim based on DHHS's failure to hire Darbouze.

---

[16] Given Darbouze's allegation that he made his internal
complaint in late April, see First Am. Compl. ¶ 24, his
suggestion that he was discharged immediately thereafter appears
to conflate his dismissal in February with the formal letter of
separation he received in May.

[17] Such a theory would also face an insurmountable
substantive impediment.  Darbouze was discharged in mid February
and learned of his discharge no later than the end of that
month.  His First Amended Complaint alleges that he made his
internal complaint of discrimination at the end of April, long
after he had been discharged.  DHHS cannot have retaliated
against Darbouze in February for something he did not do until
April.  See Taite, 2010 WL 745160, at *19.

a. Darbouze's Prima Facie Case

In his complaint, Darbouze makes two allegations relevant to Count V: (1) "[o]n April 29, 2008, [he] reported violations of his civil rights to DHHS," First Am. Compl. ¶ 24; and (2) "[w]hile his applications were pending, [he] complained to DHHS that its employees were violating his civil rights," id. ¶ 59. Darbouze does not describe his internal complaints any more specifically than that; he does not say to whom at DHHS he complained, nor does he describe the conduct about which he complained.  His evidence at summary judgment on the first element of his prima facie case includes the following interrogatory answer:

> I complained both internally and to the New Hampshire Commission for Human Rights about violations to my civil rights.  Defendant Ball, my supervisor then terminated me, in close proximity to those complaints, for either complaining about my rights being violated or because I am of a different race or national origin, or for all those reasons.  In any event, public policy encourages the types of complaints that I made, and public policy encourages a discrimination-free workplace.  By way of further answer, please see my First Amended Complaint.

Pl.'s Obj. to Summ. J., Ex. F. (doc. no. 25-4), at 4.  Darbouze also cites to two passages from Ball's deposition, see id., Ex. C (doc. no. 26-2), at 26, 54-55, but those passages concern Ball's conversation with Darbouze in late February, in which Ball told Darbouze why he had been discharged.  As that conversation took place long before Darbouze allegedly made his

internal report to DHHS, it has no relevance to his retaliation claim.

It is not at all clear that Darbouze's FAC could survive a motion to dismiss Count V, given that it is entirely conclusory. See United Auto., Aero., Agric. Impl. Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 41 (1st Cir. 2011) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009)). His objection to summary judgment is no better. It provides no evidence concerning what Darbouze said, specifically, about discrimination, or to whom, at DHHS, he complained. But, because "the employee's burden to establish a prima facie case in the retaliation context 'is not an onerous one,'" Taite, 2010 WL 745160, at *18 (quoting Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 858 (1st Cir. 2008)), the court will presume that Darbouze engaged in protected activity.

The real problem involves the third element of the prima facie case, causation. Defendants point out, correctly, that Darbouze has not alleged that Ball, LaFleur, or any of the unnamed "other employees" to whom he attributes the decisions not to hire him were aware of his internal complaint of

discrimination.[18]  In his objection to summary judgment, Darbouze
does not address that argument, and he has produced no evidence
of any sort tending to show that any person who declined to hire
him knew about his internal complaint.  Because an employment
action cannot be retaliatory, for Title VII purposes, unless the
person taking the action knew about the employee's protected
activity, see Taite, 2010 WL 745160, at *19, Darbouze's failure
to produce evidence that those who did not hire him knew about
his protected activity scuttles his prima facie case for
retaliatory failure to hire based on his internal complaint.

### b. Pretext

Even if Darbouze had established his prima facie case, he
has not shown that the reasons given for hiring others – their
superior qualifications – are pretextual.  That is, he has
failed to "raise a genuine issue of fact as to whether
[retaliation] motivated the adverse employment action."
Collazo, 617 F.3d at 50.  In the section of his memorandum where
he argues that the reasons given for hiring others were mere
pretext intended to disguise retaliation for his protected
activity, Darbouze says, with purported record support, that:

_____

[18] Given the requirement in a retaliation claim that the
decisionmaker must have known of the protected activity, see
Taite, 2010 WL 745160, at *19, plus the undisputed fact that
neither Ball nor LaFleur were the decisionmakers who declined to
hire Darbouze, his failure even to allege who made those
decisions is probably fatal to the claim stated in Count V.

(1) when he asked Ball whether there were open positions at
DHHS, Ball falsely told him there were none;[19] (2) Ball
communicated with those involved in making the hiring decisions
at issue in Count V; and (3) Ball instructed other DHHS
employees not to hire him.  Leaving aside the lack of record
support for most of those contentions,[20] Darbouze's reliance on

---

[19] One gets the sense from Darbouze's deposition and the
arguments advanced by counsel that Darbouze believes that Ball
owed him a duty to: (1) provide him with convenient shifts he
could work part-time; (2) bring him back to SYSC on a full-time
basis (notwithstanding that he never re-applied for a full-time
Youth Counselor I position); and/or (3) help him find other
positions in DHHS.  He provides no legal support for those
expectations.

[20] For example, in his memorandum of law, Darbouze says that
he testified that he was "aware that Defendant Ball instructed
hiring officials not to hire him."  Pl.'s Mem. of Law (doc. no.
25-1), at 15.  For evidentiary support he cites the following
passage from his deposition:

> Q.   So you're saying he's influencing the
> individuals who are doing the hiring?
> A.   Yeah.  I think so, yeah.
> Q.   And who are those individuals?
> A.   I think Margaret [LaFleur].
> Q.   And what is David Ball's connection to
> Margaret?
> A.   They work in the same department.
> Q.   Okay.  Who else?
> A.   I don't know.  Whoever is in there.  I don't
> remember exactly.  I don't recall everybody's name.

Pl.'s Obj. to Summ. J., Ex. A (doc. no. 26), at 91-92.  That
testimony is far too speculative to count as competent evidence
of Ball's participation in the decisions not to hire Darbouze.
See Meuser, 564 F.3d at 515 (explaining that party opposing
summary judgment "cannot rest on conclusory allegations,
improbable inferences, [or] unsupported speculation") (citation
and internal quotation marks omitted).

them is unavailing because none of them address the paramount
issue in a pretext analysis: the strength, plausibility,
consistency, and coherence of the reasons given for the adverse
employment action.  Because none of the issues Darbouze
discusses in his pretext analysis have any bearing on the
strength of defendants' explanation that candidates more
qualified than him were hired to fill the positions for which he
applied, he has failed to establish that defendants' explanation
is a pretext for discrimination.

### 3. Retaliation for Darbouze's HRC Complaint

There is no need to belabor the claim stated in Count VI,
i.e., that Ball, LaFleur, and other DHHS employees did not hire
Darbouze in retaliation for his having filed a formal charge of
discrimination with the HRC.  Darbouze filed his charge of
discrimination on May 28, 2008.  The Commissioner of the New
Hampshire Juvenile Justice System was notified of the charge by
letter dated May 30, 2008.  Two of Darbouze's five rejections
(for positions 41050 and 12507) predated the filing of his
charge and, necessarily, predated DHHS's knowledge of that
charge.  Those rejections, then, cannot have been acts of
retaliation for Darbouze's complaint to the HRC.  See Taite,
2010 WL 745160, at *19.  As for the remaining three rejections,
Darbouze has produced no evidence that any of the relevant

decision makers were aware of his protected activity, which means that his prima facie case falters on the causation element.  Beyond that, for the same reasons that apply to the claim asserted in Count V, Darbouze has not created a genuine issue of material fact regarding pretext.

### 4. Summary

Because Darbouze has not established a prima facie case of retaliatory failure to hire, and has not produced evidence sufficient to show that defendants' proffered reasons for declining to hire him are pretextual, defendants are entitled to judgment as a matter of law on Counts V and VI.

### D. Counts VII and IX

In Count VII, Darbouze asserts that Ball violated his federal constitutional right to equal protection by failing to hire him for five positions at DHHS.  In Count IX, he asserts the same claim against LaFleur.  Defendants move for summary judgment, arguing that Darbouze has failed to produce evidence that: (1) he was qualified for the positions for which he applied; (2) Ball or LaFleur were responsible for the hiring decisions at issue; or (3) any of Ball's or LaFleur's conduct toward him was motivated by animus based on his national origin or race.  Darbouze objects, arguing that he has created a genuine issue of material fact on his equal-protection claims.

Specifically, he argues that he has produced evidence that: (1) Ball and LaFleur took his national origin and race into account when deciding to discharge him[21] and/or deciding not to hire him; (2) LaFleur had the authority to fill the positions for which he applied; and (3) Ball communicated with other individuals, including LaFleur, who had hiring authority over the positions for which he applied.

Darbouze has produced no such evidence.  He has produced no evidence, not even in his own deposition, that Ball or LaFleur ever said a word about his national origin, his race, or his accent.  The court has deemed admitted the fact that neither Ball nor LaFleur had hiring authority over any of the five positions at issue here, and the "evidence" Darbouze identifies as support for the proposition that LaFleur had the authority to hire him to fill the positions at issue here consists of the underlined portion of the following passage from LaFleur's deposition:

> Q.    And are you granted with the authority to hire and/or fire –
>
> A.    <u>Yes.</u>
>
> Q.    <u>– employees?</u>

---

[21] While Darbouze mentions his discharge in his memorandum of law, Count VII, as asserted in the FAC, is limited to defendants' failure to hire him.  The court will follow the FAC and treat Count VII as being based only on defendants' failure to hire Darbouze.

A.   <u>Yes.</u>

Pl.'s Obj. to Summ. J., Ex. E (doc. no. 26-3), at 8.  That LaFleur could hire applicants to fill some positions is hardly evidence that she was responsible for filling the positions at issue here.  Because it has been deemed admitted that neither Ball nor LaFleur were responsible for hiring applicants to fill the positions at issue here, Ball and LaFleur are entitled to judgment as a matter of law on Darbouze's federal equal-protection claims.

### E. Counts VIII and X

In Count VIII, Darbouze asserts that Ball violated his state constitutional right to equal protection by failing to hire him for five positions at DHHS.  In Count X, he asserts the same claim against LaFleur.  Ball and LaFleur are entitled to judgment as a matter of law on Counts VIII and X for the same reasons that support judgment in their favor on Counts VII and IX.  Beyond that, the court notes that in <u>Marquay v. Eno</u>, the New Hampshire Supreme Court expressly declined to recognize a private right of action to enforce the constitutional rights on which Counts VIII and X are based, <u>see</u> 139 N.H. 708, 721-22 (1995), which is yet another reason why defendants are entitled to judgment as a matter of law on Counts VIII and X.

44

F. Counts XI and XII

In Counts XI and XII, Darbouze asserts that Ball is liable directly, and Toumpas and DHHS are liable vicariously, for wrongful termination under the common law of New Hampshire. Darbouze's theory is that Ball discharged him for making his internal complaint of discrimination and for lodging a formal charge of discrimination with the HRC.  Defendants move for summary judgment, arguing that Darbouze has failed to allege sufficient facts to support a claim that his discharge was motivated by bad faith, retaliation, or malice.  They further argue that Darbouze's wrongful termination claims fail as a matter of law because he has a statutory remedy for his wrongful termination.  Darbouze objects, arguing that he has raised genuine issues of material fact.  He is mistaken.

Darbouze was discharged in mid February of 2008.  He was aware of his discharge by the end of that month.  Given his knowledge of his discharge at that time, the letter he received from Ball in mid May is of no moment; that letter merely confirmed what had already taken place, i.e., Darbouze's removal from the SYSC payroll list.  Darbouze alleges that he made his internal complaint in late April of 2008, and his formal charge of discrimination is dated May 28.  Because he was discharged long before he made either his internal complaint or his formal charge of discrimination, there is no factual basis for his

claim that he was discharged because he made those complaints. Accordingly, defendants are entitled to judgment as a matter of law on Counts XI and XII.

### G. Counts XIII and XIV

In Counts XIII and XIV, Darbouze asserts that Ball is liable directly, and Toumpas and DHHS are liable vicariously, for defamation.  Specifically, Darbouze asserts that "Defendant Ball stated, untruthfully and defamatorialy that '[t]hat Haitian guy thinks he's all that.'"  First Am. Compl. ¶ 103.  Defendants move for summary judgment, arguing that: (1) the allegedly defamatory statement is a non-actionable statement of opinion; and (2) Darbouze has produced no evidence of publication. Darbouze objects, but does not address defendants' argument that the allegedly defamatory statement was merely an opinion. Rather, he argues that his deposition and one of his interrogatory answers, along with Ball's admission "that he did say something about Mr. Darbouze and some 'inability to agree on a schedule,'" Pl.'s Mem. of Law (doc. no. 25-1), at 16, is sufficient to create a triable question of fact on his claim that Ball's statements defamed him by tarnishing his "reputation as a 'very humble and hardworking individual,'" id.

In New Hampshire, "a statement of opinion is not actionable . . . unless it may reasonably be understood to imply the

46

existence of defamatory fact as the basis for the opinion."
Nash v. Keene Publ'g Corp., 127 N.H. 214, 219 (1985) (citing
Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974); Pease
v. Telegraph Publ'g Co., 121 N.H. 62, 65 (1981); Duchesnaye v.
Munro Enters., Inc., 125 N.H. 244, 249 (1984); Restatement
(Second) of Torts § 566 (1977)).  The court is strongly inclined
to agree with defendants that the statement on which Darbouze's
defamation claims are based, i.e., "[t]hat Haitian guy thinks
he's all that," First Am. Compl. ¶ 103, is a non-actionable
statement of opinion.  But the court need not even reach that
issue.

As the court has already explained, Darbouze has produced
no competent evidence that Ball ever said anything about his
being from Haiti or that Ball ever said Darbouze thought he was
"all that."  All Darbouze offers is: (1) the inadmissible
hearsay from his deposition and his discovery materials, neither
of which mention comments by Ball about either his national
origin or his opinion of himself; and (2) Ball's testimony that
in August or September of 2007, he said something to Keeley
about his inability to come to an agreement with Darbouze on a
schedule.  Because Darbouze has produced no evidence that Ball
ever made the statement on which his defamation claims are
based, defendants are entitled to judgment as a matter of law on
Counts XIII and XIV.

47

## Conclusion

For the reasons given, defendants' motion for summary judgment, document no. 17, is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya B. McCafferty
United States Magistrate Judge

December 16, 2011

cc:  Seth J. Hipple, Esq.
     Stephen T. Martin, Esq.
     Rebecca L. Woodard, Esq.